```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

**THE BIG IDEA COMPANY,**

       Plaintiff,

  vs.                             Civil Action 2:11-cv-1148
                                    Magistrate Judge King

**THE PARENT CARE RESOURCE, LLC,**
*et al.*,

       Defendants.

### OPINION AND ORDER

This matter is before the Court with consent of the parties, 28 U.S.C. § 636(c), for consideration of defendants' *Motion to Disqualify Counsel* ("*Defendants' Motion*"), Doc. No. 6, plaintiff's *Memorandum in Opposition* ("*Plaintiff's Response*"), Doc. No. 7, and defendants' *Reply to Plaintiff's Memorandum in Opposition* ("*Defendants' Reply*"), Doc. No. 11. Defendants seek the disqualification of plaintiff's counsel, John J. Okuley and the law firm of Okuley Smith, LLC, on the basis of a conflict of interest existing between John Okuley and defendants P. Michael Valley, II and Sharon A. Staley. For the reasons that follow, *Defendants' Motion* is **GRANTED**. The Court determines that an evidentiary hearing is not necessary for the resolution of *Defendants' Motion* and denies plaintiff's request for an evidentiary hearing. *See Gen. Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 710 (6th Cir.

1

1982); *Dayton Bar Ass'n v. Parisi*, 131 Ohio St.3d 345, at ¶ 15 (Ohio 2012) (indicating that the Ohio Supreme Court has never required an evidentiary hearing before ruling on every motion for disqualification).

## I. BACKGROUND

Plaintiff The Big Idea Company brings this action for trademark infringement, unfair competition under the Lanham Act, and copyright infringement, based on, *inter alia*, defendants' use of mark "THE PARENT CARE RESOURCE." *Complaint*, Doc. No. 2, at ¶¶ 23-41. Plaintiff is the owner of the "The Parent Care Solution" trademark, and is represented by John Okuley and the law firm of Okuley Smith, LLC. *Id.* at ¶ 24. Named as defendants are The Parent Care Resource, LLC, PMV Management Company, Inc., Eastwind Capital, LLC, P. Michael Valley II, Insurance Agency, Inc., Sharon A. Staley and P. Michael Valley, II.

*Defendants' Motion* seeks the disqualification of plaintiff's counsel on the basis of a conflict of interest existing between John Okuley and defendants Mr. Valley and Ms. Staley. Defendants allege that attorney Jerry K. Mueller provided them with legal services in a matter substantially related to this case while Mr. Mueller was a named partner with the law firm of Mueller Smith & Okuley, LLC. *Defendants' Motion*, at 2-3. Plaintiff's counsel, Okuley Smith, LLC, is a successor to Mueller Smith & Okuley, LLC, and Mr. Mueller is no longer associated with either firm. *Affidavit of John Okuley* ("*Okuley Affidavit*"), attached to *Plaintiff's Response*.

While Mr. Mueller was with the firm of Mueller Smith & Okuley, he performed a trademark search for defendants and gave his opinion via

2

email that "[n]one of [the] hits appear to pose an impediment to federal registration of the mark." *Defendants' Motion*, Exhibits A, B. Mr. Valley responded to Mr. Mueller's email and stated the following: "Can you go ahead and start the process, if you need a retainer let us know but we would like to hire you to do this[.]" *Id.*, Exhibit C. Mr. Mueller responded on the same day, requesting a $1,000 retainer and agreeing to "start working on the [trademark] application." *Id.*, Exhibits C, D. An invoice sent to defendant Eastwind Capital, another of the defendants named in this action, shows that the $1,000 retainer was received by Mueller Smith & Okuley, LLC, and that $201.00 was charged for an "online trademark registrability search." *Id.*, Exhibit E. Mr. Mueller also billed Eastwind Capital for one half hour of his time. *Okuley Affidavit*, at ¶ 14. There is no indication that Mr. Mueller ever completed or submitted the trademark application. *See Defendants' Reply*, at 4.

     Plaintiff argues that no conflict of interest exists and points to a lack of information about defendants in Okuley Smith, LLC's records. Specifically, plaintiff asserts that – despite having policies in place requiring a conflict check and engagement agreement – Okuley Smith LLC's records do not show that a conflict check was performed or that an engagement agreement was ever obtained for any of the defendants. *Okuley Affidavit*, at ¶¶ 8-10. Also, the firm's records allegedly do not indicate that a trademark availability search was performed for any of the defendants. *Id.* at ¶ 15. Plaintiff also asserts that Mr. Mueller "had an unauthorized practice of maintaining certain files on his laptop computer, or not maintaining any

electronic or paper files." *Id.* at ¶ 19.

**II. STANDARD**

The standard for disqualifying an attorney in federal litigation was summarized by the court in *Hamerick v. Union Twp.*, 81 F. Supp. 2d 876 (S.D. Ohio 2000):

> A motion to disqualify is the proper method for a party-litigant to bring an issue of conflict of interest or the breach of an ethical duty to the court's attention. *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir. 1980). Confronted with such a motion, courts must be sensitive to the competing public interests of requiring professional conduct by an attorney and of permitting a party to retain the counsel of his choice. *Kitchen v. Aristech Chem.*, 769 F. Supp. 254, 257 (S.D. Ohio 1991). In order to resolve these competing interests, the courts must balance the interests of the public in the proper safeguarding of the judicial process together with the interests of each party to the litigation. *General Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 711 (6th Cir. 1982).
>
> The power to disqualify an attorney from a case is "incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession." *Kitchen*, 769 F.Supp. at 256 (quoting *Ex Parte Burr*, 9 Wheat. 529, 22 U.S. 529, 531, 6 L.Ed. 152 (1824)). However, "the ability to deny one's opponent the services of his chosen counsel is a potent weapon." *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988). Motions for attorney disqualification should be viewed with extreme caution for they can be misused as techniques of harassment. *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982).

*Hamerick*, 81 F. Supp. 2d at 878.

**III. DISCUSSION**

As a preliminary mater, it is necessary to discuss what rules are applicable in this case. Defendants argue that Ohio Rules of Professional Conduct 1.9 and 1.10 require that John Okuley and Okuley Smith, LLC, be disqualified as plaintiff's counsel in this case. *Defendants' Motion*, at 1. Plaintiff argues that the issue of

4

disqualification should be decided under a three-part common law test. *Plaintiff's Response*, at 3-4.

> "The primary purpose behind the prohibition . . . against dual representation of clients with adverse interests is to ensure that confidences or secrets of a client imparted to an attorney in the course of their attorney-client relationship will not be revealed to an adverse party or used to the client's disadvantage."

*OneBeacon Am. Ins. Co. v. Safeco Ins. Co.*, No. C-1-07-358, 2008 WL 4059836, at *2 (S.D. Ohio Aug. 25, 2008) (quoting *Sarbey v. Nat'l City Bank*, 66 Ohio App.3d 18, 26 (9th Dist. 1990)).  Despite previous reliance on the common law, the United States Court of Appeals for the Sixth Circuit now looks "to the codified Rules of Professional Conduct for guidance" in determining whether an attorney should be disqualified from representing a client based on a conflict of interest.  See *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Alticor, Inc.*, 466 F.3d 456, 457 (6th Cir. 2006), vacated in part on other grounds, 472 F.3d 436 (6th Cir. 2007).  Accordingly, the Ohio Rules of Professional Conduct govern in this district.  *Perkins v. Rieser*, No. 3:07-cv-325, 2012 WL 1606657, at *1 (S.D. Ohio May 8, 2012); *Khan v. Cellco P'ship*, No. 1:10-cv-118, 2011 WL 5042071, at *2 (S.D. Ohio Sept. 8, 2011) (citing *OneBeacon*, 2008 WL 4059836 at *2).

Defendants Mr. Valley and Ms. Staley argue that Mr. Mueller provided legal services to them in a matter substantially related to this case while Mr. Mueller was a partner with the law firm of Mueller Smith & Okuley, LLC.  *Defendants' Motion*, at 2-3.  As noted *supra*, Okuley Smith, LLC, is a successor to Mueller Smith & Okuley, LLC, and Mr. Mueller is no longer associated with either firm.  *Okuley*

5

*Affidavit*, at ¶ 1. Because Mr. Mueller is no longer associated with the firm, disqualification of John Okuley and Okuley Smith, LLC, is mandatory in this case if Mr. Mueller would be disqualified under Rule 1.9(a) from representing plaintiff by virtue of his previous representation of defendants, and if that disqualification is imputed to John Okuley and Okuley Smith, LLC, under Rule 1.10(b).

    **A.    Ohio Rule 1.9(a)**

Ohio Rule 1.9(a) provides in pertinent part:

> Unless the former client gives informed consent, confirmed in writing, a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.

Ohio R. Prof. Conduct 1.9(a). "The use of the term 'shall' in Rule 1.9(a) requires mandatory disqualification when those circumstances defined therein are present." *R.E. Kramig Co., Inc. v. Resolute Mgmt., Inc.*, No. 1:07-cv-658, 2009 WL 1395342, at *4 (S.D. Ohio May 18, 2009) (citing *OneBeacon*, 2008 WL 4059836 at *2). The term "substantially related matter" is defined as "one that involves the same transaction or legal dispute or one in which there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation of a client would materially advance the position of another client in a subsequent matter." Ohio R. Prof. Conduct 1.0(n).

    In the case presently before the Court, there is no question that defendants Mr. Valley and Ms. Staley are former clients of Mr. Mueller. "An attorney-client relationship includes the representation of a client in court proceedings, advice to a client, and any action

6

on a client's behalf that is connected with the law." *Hamrick*, 79 F. Supp. 2d at 875 (citing *Landis v. Hunt*, 80 Ohio App.3d 662, 669-70 (10th Dist. 1992)). The test of whether an attorney-client relationship was created is "essentially whether the putative client reasonably believed that the relationship existed and that the attorney would therefore advance the interests of the putative client." *Id.* (citing *Henry Filters, Inc. v. Peabody Barnes, Inc.*, 82 Ohio App.3d 255, 261 (6th Dist. 1992)).

Plaintiff does not dispute the fact that Mr. Mueller provided legal services to defendants. *See Plaintiff's Response*, at 7-8 (indicating that Mr. Mueller provided services to defendants and that the exhibits submitted with *Defendants' Motion* "on their face only prove that Attorney Mueller, and Attorney Mueller alone, dealt with the Defendants.") Additionally, the exhibits submitted with *Defendants' Motion* establish that an attorney-client relationship existed. Mr. Mueller performed a trademark search for defendants and rendered his professional opinion via email that "[n]one of [the] hits appear to pose an impediment to federal registration of the mark." *Defendants' Motion*, Exhibits A, B. In response, Mr. Valley stated that they "would like to hire" Mr. Mueller; Mr. Mueller requested a $1,000 retainer and agreed to "start working on the application." *Id.*, Exhibits C, D. An invoice sent on firm letterhead to defendant Eastwind Capital shows that the $1,000 retainer had been received by Mueller Smith & Okuley, LLC, and that $201.00 had been charged for an "online trademark registrability search." *Id.*, Exhibit E. The firm records show that Mr. Mueller also billed Eastwind Capital for one

7

half hour of his time. *Okuley Affidavit*, at ¶ 14. This Court concludes that an attorney-client relationship existed between Mr. Mueller and Mr. Valley and Ms. Staley because Mr. Mueller provided legal advice to them, agreed to work for them, and charged for his services.

Plaintiff's interests in this matter are materially adverse and substantially related to the matter for which Mr. Valley and Ms. Staley received legal advice from Mr. Mueller. Mr. Valley and Ms. Staley received legal advice from Mr. Mueller regarding the availability of, applying for, and registering "THE PARENT CARE RESOURCE" mark. *See Defendants' Motion*, Exhibits A-E. In this action, plaintiff asserts claims based on defendants' use of "THE PARENT CARE RESOURCE" mark. *Complaint*, Doc. No. 2, at ¶¶ 23-41. To prevail in this case, plaintiff will be required to prove, at a minimum, that defendants' use of "THE PARENT CARE RESOURCE" mark "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of" defendants with plaintiff, "or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by" plaintiff. *See* 15 U.S.C. § 1125(a)(1)(A). The "registrability" of the "THE PARENT CARE RESOURCE" mark and the similarities between defendants' mark and plaintiff's mark are directly at issue in this case, and they are substantially related to the legal services Mr. Mueller provided for defendants. Mr. Mueller performed a "registrability search" for the mark, rendered his legal opinion as to the mark's availability and agreed to draft and file an application to register the trademark. *See Defendants' Motion*, Exhibits A-D. The direct relationship between

8

Mr. Mueller's prior representation of defendants and plaintiff's claims in this case creates a substantial risk that confidential factual information obtained by Mr. Mueller would materially advance plaintiff's interests.  If it were Mr. Mueller who represented plaintiff in this action, he would surely have to argue that his legal advice to defendants regarding the mark was incorrect and that defendants' use of the mark infringed on plaintiff's rights.  It is evident, based on the foregoing, that plaintiff's interests are adverse to defendants' interests, and that this action involves a matter substantially related to the matter in which Mr. Mueller previously represented defendants.

Finally, Mr. Valley and Ms. Staley have not consented to the representation of plaintiff by Mr. Mueller, John Okuley, or Okuley Smith, LLC, in this case.  Accordingly, all the elements requiring disqualification under Ohio Rule 1.9(a) are present;  Mr. Mueller would be prohibited from representing plaintiff under the circumstances presented by this case.  *See R.E. Kramig Co.*, 2009 WL 1395342 at *4 (indicating that disqualification is mandatory when the terms of Rule 1.9(a) are met).

   B.   **Ohio Rule 1.10**

The imputation of a conflict of interest is governed by Ohio Rule 1.10,[1] which provides in pertinent part:

---

[1] *Plaintiff's Response* ignores the applicability of the Ohio Rules of Professional Conduct. Instead, as noted *supra*, plaintiff relies on a three-part common law test and argues that disqualification is not warranted because there was no attorney client relationship between John Okuley and defendants. *See Plaintiff's Response*, at 7-8.  As previously indicated, however, the United States Court of Appeals for the Sixth Circuit now looks "to the codified Rules of Professional Conduct for guidance" in determining whether an attorney should be disqualified from representing a client based on a conflict

> (b) When a lawyer is no longer associated with a firm, no lawyer in that firm shall thereafter represent a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, if the lawyer knows or reasonably should know that either of the following applies:
>
> (1) the formerly associated lawyer represented the client in the same or a substantially related matter;
>
> (2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter.

Ohio R. Prof. Conduct 1.10(b)(1),(2).

As explained above, Mr. Mueller would be prohibited from representing plaintiff under Rule 1.9(a) based on his previous attorney-client relationship with some or all of the defendants. Mr. Mueller is also no longer associated with Okuley Smith, LLC or Mueller Smith & Okuley, LLC. *Okuley Affidavit*, at ¶ 20. These issues are not disputed. Instead, plaintiff argues that no conflict of interest currently exists, that no knowledge was retained by John Okuley or Okuley Smith, LLC, regarding Mr. Mueller's prior representation of Mr. Valley and Ms. Staley, and that the files and billing records of Okuley Smith, LLC, do not contain any information about the nature of

---

of interest. *See Nat'l Union Fire Ins. Co.*, 466 F.3d at 457. "In the absence of any Sixth Circuit authority mandating application of the" three-part common law test, "the Court is bound to apply the Ohio Rules of Professional Conduct." *Khan*, 2011 WL 5042071 at *5. Ohio Rule 1.9(a) governs conflicts involving "former clients" and Ohio Rule 1.10 governs the imputation of those conflicts to a firm. By its terms, Rule 1.10 does not require that an actual attorney-client relationship have existed between the party seeking disqualification and the attorney sought to be disqualified. Ohio R. Prof. Conduct 1.10(b).
    Plaintiff also argues that Mr. Mueller's prior representation of defendants and all confidential information obtained during that representation have been effectively screened from other members in the law firm. *Plaintiff's Response*, at 6. Ohio Rules 1.9 and 1.10 do not, however, provide for a screening exception under the circumstances of this case. *See* Ohio R. Prof. Conduct 1.9, 1.10; *Khan*, 2011 WL 5042071, at *7 ("Once an attorney is disqualified under Ohio R. Prof. Cond. 1.9, a new attorney in his firm cannot avoid disqualification by 'screening' no matter how diligently.") (citations omitted).

10

Mr. Mueller's representation. *Id.*, at ¶¶ 21-23. Although plaintiff does not expressly make the argument, the Court construes *Plaintiff's Response* to argue that disqualification is not necessary because John Okuley and Okuley Smith, LLC, did not know that Mr. Mueller's representation of Mr. Valley, Ms. Staley, or Eastwind Capital concerned a matter substantially related to this action.

In support of this argument, plaintiff asserts that – despite the existence of a firm policy requiring a conflict check and an engagement agreement prior to representing a client – the records of Okuley Smith, LLC, do not show that a conflict check was performed or that an engagement agreement was ever obtained for any of the defendants. *Okuley Affidavit*, at ¶¶ 8-10. Also, the firm's records allegedly do not indicate that a trademark availability search was performed for any of the defendants, and Mr. Mueller allegedly "had an unauthorized practice of maintaining certain files on his laptop computer, or not maintaining any electronic or paper files." *Id.* at ¶¶ 15, 19.

Plaintiff's arguments actually suggest that, had firm policies been observed, John Okuley and Okuley Smith, LLC, reasonably should have known that Mr. Mueller's prior representation of defendants concerned a matter substantially related to the representation of plaintiff in this case. Firm policies requiring a conflict search and an engagement agreement prior to the representation of a client are reasonable measures to prevent conflicts of interest. Had Mr. Mueller followed firm policies, it is highly likely – given the extent of John Okuley's conflict check prior to accepting plaintiff as a client – that John Okuley and Okuley Smith, LLC, would have known that Mr.

Mueller's prior representation of defendants was substantially related to this action.

Whether or not Mr. Mueller followed firm policy is of no consequence.  The Rules of Professional Conduct are in place to protect clients, not attorneys, and an attorney's failure to maintain adequate records or to follow firm policy cannot be used as a justification to avoid disqualification based on a conflict of interest.  See Ohio R. Prof. Conduct 1.7, Comment 1 ("The principles of loyalty and independent judgment are fundamental to the attorney-client relationship and underlie the conflict of interest provisions of these rules.  Neither the lawyer's personal interest, the interests of other clients, nor the desires of third persons should be permitted to dilute the lawyer's loyalty to the client."); *OneBeacon,* 2008 WL 4059836 at *2 ("The primary purpose behind the prohibition . . . against dual representation of clients with adverse interests is to ensure that confidences or secrets of a client imparted to an attorney in the course of their attorney-client relationship will not be revealed to an adverse party or used to the client's disadvantage.") (citations omitted).  Additionally, John Okuley knew or should have known – prior to the firm's engagement by plaintiff – that Mr. Mueller had billed defendant Eastwind Capital for legal services.  *Okuley Affidavit*, at ¶¶ 13, 14, 24.  John Okuley also knew, or reasonably should have known had firm policies been followed, that Mr. Mueller had performed a "trademark registrability search" for defendants regarding "THE PARENT CARE RESOURCE" trademark.  *See Defendants' Motion*, Exhibit E (an invoice sent on firm letterhead to defendant Eastwind Capital detailing the services Mr. Mueller

provided).  Given that plaintiff's claims are predicated on defendants' alleged use of the "THE PARENT CARE RESOURCE" mark, and the invoice on firm letterhead sent to defendant Eastwind Capital indicating that Mueller Smith & Okuley, LLC, had "rendered" services regarding "'THE PARENT CARE RESOURCE' Trademark," John Okuley and Okuley Smith, LLC, reasonably should have known that Mr. Mueller had represented defendants in a matter substantially related to this case.

All of the elements of Rule 1.10(b)(1) have been met.  It follows that Mr. Mueller's disqualification must be imputed to John Okuley and Okuley Smith, LLC, in this case.  Mr. Mueller would be prohibited from representing plaintiff under Rule 1.9(a), given his previous professional relationship with Mr. Valley and Ms. Staley.  That disqualification must be imputed to John Okuley and Okuley Smith, LLC, because Mr. Muller is no longer associated with firm, the firm's representation of plaintiff is materially adverse to defendants, and John Okuley and the firm reasonably should have known that Mr. Mueller represented defendants in a matter substantially related to this action.  Under the circumstances, disqualification is mandatory under Ohio R. Prof. Conduct 1.10(b)(1).  See *OneBeacon*, 2008 WL 4059836 at *2.

Accordingly, defendants' *Motion to Disqualify Counsel*, Doc. No. 6, is **GRANTED**.


September 14, 2012              *s/ Norah McCann King*
                              Norah M<sup>c</sup>Cann King
                           United States Magistrate Judge

13